```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                           EASTERN DIVISION


MARILYN JOHNSON,                   )
                                   )
            Plaintiff,             )
                                   )
      v.                           )      No. 4:04 CV 1233 DDN
                                   )
JOHN E. POTTER,                    )
Postmaster General,                )
                                   )
            Defendant.             )
```

### **MEMORANDUM**

This matter is before the court on the motion of defendant John E. Potter, Postmaster General, for summary judgment (Doc. 42) and the motion of plaintiff Marilyn Johnson for summary judgment (Doc. 46). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 15.) A hearing was held March 8, 2006.

### **Pleadings**

Plaintiff Marilyn Johnson brought an action for employment discrimination under Title VII against defendant John E. Potter, Postmaster General. Plaintiff alleges that she was terminated from her job with the United States Postal Service because of her race, sex, national origin, and religion. She alleges that she was treated differently from others at work by her manager, and was the only employee charged with disciplinary action for attendance irregularities, even though other employees were also absent. Plaintiff would like her job back, and all lost wages and benefits from the time she was terminated. (Doc. 1.)

In his answer, defendant Postmaster General John E. Potter asserts that plaintiff has failed to state a claim upon which relief can be granted, that she has failed to exhaust her administrative remedies, that plaintiff's termination was based on legitimate business reasons, and that plaintiff's termination was in compliance with statutory and regulatory requirements and was not discriminatory. (Doc. 9 at 2-3.)

Defendant moves for summary judgment. He argues that plaintiff is unable to establish a prima facie case of discrimination under these facts; specifically, he contends that plaintiff cannot show she was meeting the legitimate expectations of her employer, and that she cannot identify similarly situated employees outside of her protected classes who were treated more favorably or differently. (Doc. 42 at 5-8.) Defendant also argues that, even if plaintiff establishes a prima facie case, he has articulated a legitimate, nondiscriminatory reason for terminating plaintiff, and plaintiff cannot show this reason is a pretext for discrimination. Defendant argues that the Postal Service terminated plaintiff because of her attendance record. (Doc. 42 at 8-10.)

Plaintiff also moves for summary judgment, arguing that she can establish a prima facie case of discrimination. She asserts that she met her employer's legitimate expectations when compared with the treatment of other similarly situated employees who are not members of plaintiff's group. Plaintiff argues that her supervisor did not discipline other employees who were similarly situated in the same way she was punished, and that her supervisor's harsh treatment of her was discriminatory. (Doc. 46.)

### **Summary Judgment Standard**

Summary judgment must be granted, if the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Union Elec. Co. v. Southwestern Bell Tel. L.P.</u>, 378 F.3d 781, 785 (8th Cir. 2004). The evidence is viewed in the light most favorable to the non-moving party. <u>Union Elec. Co.</u>, 378 F.3d at 785. "A fact is 'material' if it might affect the outcome of the case and a factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Scottsdale Ins. Co. v. Tri-State Ins. Co. of Minn.</u>, 302 F. Supp. 2d 1100, 1103 (D.N.D. 2004).

Initially, the moving party must demonstrate the absence of an issue for trial. <u>Celotex</u>, 477 U.S. at 323. Once a motion is properly

made and supported, the nonmoving party may not rest upon the allegations in its pleadings but must instead proffer admissible evidence of specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir.) cert. denied, 543 U.S. 956 (2004); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003).

## **Undisputed Facts**

Plaintiff Marilyn Johnson was employed by the United States Postal Service as a full-time, PS-4 Automated Mark-up Clerk, Computerized Forwarding System, in St. Louis, Missouri. Plaintiff is an African-American female. When plaintiff was terminated, her direct supervisor was Vickie Lake, a Caucasian female. Lake's religious denomination is Christian. In addition to Lake, plaintiff was disciplined by other supervisors during her employment. (Doc. 42 at 1-2, Ex. B, Doc. 53 Ex. BBB.)

On October 3, 2000, plaintiff was terminated and her notice of removal, issued by Lake, cited the reason as "Failure to Maintain a Regular Work Schedule." Her termination was effective November 11, 2000. Before Lake issued the notice, it was reviewed and approved by Richard Black, an African American male who was, at that time, the Manager of Customer Service Operations. (Doc. 42 at 2, ¶¶ 4-5, Ex. D.)

The notice of removal and plaintiff's leave records from the Postal Service indicate that plaintiff was terminated because from March 1 until September 20, 2000, plaintiff had 20 unscheduled absences from work. (Doc. 42 Exs. D, E.)

Prior to her termination, plaintiff had been given oral and written warnings and had received other forms of discipline for her unscheduled absences. (Doc. 42 Exs. B, D, F, G, H.) The Postal Service uses a progressive discipline system. The first step is a job discussion, the second step is a warning letter, the third step is a seven-day suspension, and the fourth step is a 14-day suspension. Some facilities alter this process by allowing two warning letters and two 14-day suspensions. After these steps, the person is terminated. ( Id. Exs. I, J at 109-12.)

On November 12, 1998, plaintiff received a letter of warning for failing to follow instructions. On December 1, 1998, plaintiff received a second warning letter for failure to follow instructions. On December 8, 1998, plaintiff received a seven-day suspension for failure to follow instructions. On August 19, 1999, plaintiff received a 14-day suspension from Jovana Henry, an African-American female, for failing to maintain a regular work schedule. On December 28, 1999, plaintiff received a second 14-day suspension from Vickie Lake for failure to maintain a regular work schedule. (Doc. 42 Exs. D, G, H, K, L, M.)

The Gateway District's Attendance and Tardiness Policy, dated February 1996, stated "[e]mployees are expected to maintain their assigned schedule and must make every effort to avoid unscheduled absences." (Doc. 42 Ex. N at 2.) An unscheduled absence is an absence from work that was not requested and approved in advance. The policy provided a "Five Minute Leeway Rule" which allowed employees a five minute variation when clocking into work, to allow for employee congestion at the time clock that might cause an otherwise on-time employee to clock in late. The policy provided that repeated tardiness would result in disciplinary action. (Doc. 42 Ex. N.) The Employee and Labor Relations Manual for the Postal Service stated that employees were required to be in regular attendance and to report to work at their scheduled time. (Doc. 42 Ex. O.)

Plaintiff filed a grievance with the Gateway District Labor Relations Office; the grievance was denied. The Labor Relations committee stated that "[b]y any standard" plaintiff's amount of absences was not acceptable attendance. (Doc. 42 Ex. P.)

Plaintiff also filed a complaint with the Equal Employment Opportunity Commission, alleging her termination was a result of discrimination. The EEOC found that defendant did not discriminate against plaintiff, specifically that plaintiff failed to state a prima facie case of discriminatory termination. (Doc. 42 Ex. Q.) Plaintiff appealed this decision, and the EEOC appeals section affirmed the lower decision. (Id. Ex. S.)

Several other employees of the Postal Service were disciplined by either suspension or termination for failure to maintain a regular work schedule. (Doc. 42 Ex. T, U, V, W.)[1]

Plaintiff had 873.62 hours of unscheduled leave in 1997, 1538.01 hours of unscheduled leave in 1998, 503.87 hours in 1999, and 244.13 hours in 2000. (Doc. 42 Ex. HH.) Employee Bierman had 28.01 hours in 1997, 7.76 in 1998, 0.5 hours in 1999, and 0.91 hours in 2000. Employee Brock had 0 hours in 1997, 48 hours in 1998, 1.25 hours in 1999, and 8 hours in 2000. Employee Charters had 0 hours in 1997, 0 hours in 1998, 0 hours in 1999, and 0 hours in 2000. Employee Hart had 43.11 hours in 1997, 11.58 hours in 1998, 29.77 hours in 1999, and 2.20 hours in 2000. Employee Rogers had 8 hours in 1997, 90.74 hours in 1998, 24 hours in 1999, and 142.43 hours in 2000. Employee Vondera had 56 hours in 1997, 20.18 hours in 1998, 33.15 hours in 1999, and 24 hours in 2000. (Id. Exs. II, JJ, KK, LL, MM, NN.)

## **Discussion**

To survive summary judgment in a Title VII discrimination case, plaintiff must establish a prima facie case of discrimination based on race, sex, and national origin. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). "To establish a prima facie case of race discrimination, [plaintiff] must show: (1) she is a member of a protected class, (2) she was meeting her employer's legitimate job expectations, (3) she suffered an adverse employment action, and (4) 'similarly situated employees outside the protected class were treated differently.'" Shanklin v. Fitzgerald, 397 F.3d 596, 602 (8th Cir.), cert. denied, 126 S. Ct. 807 (2005) (quoting Tolen v. Ashcroft, 377 F.3d 879, 882 (8th Cir. 2004)); Clark v. Runyon, 218 F.3d 915, 918 (8th Cir.

---

[1]Plaintiff disputes the accuracy of these documents, and claims the best evidence of her employment attendance is contained in USPS Forms 3972, which have been destroyed due to the Postal Services' document retention policy. (Doc. 46 at 5.) Both plaintiff and defendant agree that these documents were destroyed pursuant to document retention policies of the defendant, and, therefore, were not destroyed in bad faith. The remaining documents are the most accurate representation of plaintiff's absences, as they are based on the time clock. Plaintiff can point to no evidence raising an issue of fact.

2000). If plaintiff establishes a prima facie case, the burden shifts to defendant to show "a legitimate, non-discriminatory reason for the adverse employment action." Tolen, 377 F.3d at 882 (8th Cir. 2004). If defendant articulates a legitimate, non-discriminatory reason for plaintiff's termination, the presumption of discrimination disappears and the burden shifts back to plaintiff to show that this reason is merely a pretext for discrimination. Mayer v. Nextel West Corp., 318 F.3d 803, 807 (8th Cir. 2003); Rose-Maston v. NME Hospitals, Inc., 133 F.3d 1104, 1106 (8th Cir. 1998).

Plaintiff, as an African-American woman, is a member of a protected class. See Davis v. KARK-TV, Inc., 421 F.3d 699, 704 (8th Cir. 2005). She also suffered an adverse employment action, because her employment was terminated. However, the parties disagree as to whether plaintiff was meeting the legitimate job expectations of her employer. Plaintiff asserts that it is clear that she was meeting her employer's expectations when compared with her supervisor's treatment of other similarly situated employees not members of plaintiff's protected group. (Doc. 46 at 5.) Defendant argues that it is the expectation of the Postal Service that employees maintain a work schedule and not be tardy, and plaintiff was not meeting this expectation. (Doc. 42.)

Plaintiff has presented no facts that she was meeting the legitimate expectation of her employer. Plaintiff does not dispute that she missed many scheduled days of work and was tardy on many occasions, nor does she offer any explanation why she did so. See Riggs v. Kansas City Missouri Public School District, 385 F.3d 1164, 1166 (8th Cir. 2004) (when plaintiff did not dispute that subordinates complained about him or that he failed to do work requested of him, he did not establish prima facie case of discrimination); Shanklin, 397 F.3d at 602-03 (plaintiff's "bald assertions" that she was meeting employers expectations, when record did not support her assertions, is not enough to establish prima facie case).

Clearly, plaintiff was not meeting her employer's legitimate expectations with regard to her attendance record. The Postal Service's policy, set out in the Gateway District's Attendance and Tardiness Policy, states that "[e]mployees are expected to maintain their assigned schedule and must make every effort to avoid unscheduled absences."

-6-

(Doc. 42 Ex. N at 2.) However, plaintiff failed to do this on many occasions, with 20 unscheduled absences from March 1 to September 20, 2000. Further, the policy provided that employees would be disciplined for failing to adhere to the schedule or being tardy. The Postal Service followed procedures when disciplining her, giving her two warning letters, the seven-day suspension, and two 14-day suspensions, before finally terminating her employment.[2] (Id. Exs. D, G, H, K, L, M.)

Plaintiff implies that the Gateway District's Attendance and Tardiness Policy was not binding on employees (Doc. 47 at ¶¶ 11-14), but this argument is not persuasive. Certainly, at a job where workers were given a schedule, and were required to clock-in upon arrival, plaintiff was clearly under notice that she was expected to be at work at a certain time and on certain days. This attendance policy and legitimate employer expectation was further emphasized to plaintiff when she was disciplined for violating this policy.

Plaintiff has also failed to show she was treated differently from similarly situated employees outside her protected class. "To be similarly situated, the comparable employees 'must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.'" Tolen, 377 F.3d at 882; see Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 852 (8th Cir. 2005) (quoting Gilmore v. AT & T, 319 F.3d 1042, 1046 (8th Cir. 2003)) (utilizing less onerous standard that plaintiff must show she and other employees were involved in the same or similar conduct, but were disciplined differently). [3]

---

[2] Plaintiff alleges that her supervisor, Vickie Lake, was the primary person involved in her discrimination and harassed her at work. However, plaintiff was disciplined by other supervisors as well. (Doc. 42 Ex. BBB at 16-18.)

[3] The court in Rodgers noted that,

[t]here appear[s] to be conflicting lines of cases in our Circuit regarding the standard for determining whether employees are similarly situated at the prima facie stage of the McDonnell Douglas burden-shifting framework. One line sets a "low threshold" for employees to be considered

Under either standard, plaintiff has not met her burden to establish that similarly situated employees were disciplined differently from her for similar conduct. No other employee had the same, long-standing poor attendance record as plaintiff. Plaintiff points to instances where other employees missed similar hours as she during certain time periods, but none of these employees had the chronic attendance and tardiness issues as plaintiff, spanning at least three years. As noted above in the undisputed facts, plaintiff's hours of missed work far exceeded those of other employees, employees she alleges are similarly situated. Plaintiff has shown the court no similarly situated employee who was treated differently than herself.

For these reasons, plaintiff has failed to establish a prima facie case of discrimination. She has failed to establish that she was meeting the legitimate expectations of her employer, and does not dispute that she missed the amount of work alleged by defendant. She offered no explanation for her poor attendance record. Further, she can point the court to no similarly situated employee who was disciplined less harshly than herself. Therefore, she has failed to establish a prima facie case of discrimination.

Even assuming that plaintiff had established a prima facie case of discrimination, she has failed to show that the proffered explanation given by defendant, that she failed to maintain an adequate work schedule by missing work and being tardy, was a pretext for discrimination. "[T]o survive a motion for summary judgment, a plaintiff must: (1) present evidence creating a fact issue as to whether the employer's proffered reason[ ][is] pretextual; and (2) present evidence that supports a reasonable inference of unlawful discrimination." Russell v. TG Missouri Corp., 340 F.3d 735, 743 (8th Cir. 2003) (quoting Young v. Warner-Jenkinson Co. Inc., 152 F.3d 1018,

---

> similarly situated, requiring only that the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. . . . The other line, upon which the district court relied, is more rigorous at the prima facie stage and requires that the employees must be "similarly situated in all respects.

Rodgers, 417 F.3d at 851 (internal citations omitted).

1023 (8th Cir. 1998)); Rose-Maston, 133 F.3d at 1108 (plaintiff must "create[] a reasonable inference that [race] was a determinative factor in the adverse employment decision.").

In instances when plaintiff is alleging that her discipline was more harsh than that of other employees, she must show that "it was not the employer's policy or practice to respond to such problems in the way it responded in the plaintiff's case." Erickson v. Farmland Industries, Inc., 271 F.3d 718, 727 (8th Cir. 2001). Plaintiff must show that she and other employees were "similarly situated in all relevant respects and yet she received a more severe punishment for committing substantially the same offense." Russell, 340 F.3d at 745 (violations need not be identical, but of "comparable seriousness").

As stated above, plaintiff has pointed this court to no facts that demonstrate an inference of discrimination to rebut defendant's legitimate non-discriminatory reason for terminating her employment. As stated above, there was no employee who was similarly situated, yet treated differently. Plaintiff has not proffered any other evidence that creates any inference that she was discriminated against because of her race or gender. Defendant followed the required disciplinary procedures when terminating her. Further, plaintiff's assertions that Lake disliked all African-American women is not supported by any evidence, and is undercut by plaintiff's assertions that she was treated differently from all others at work, some of whom were in her same protected class.[4]

Even if other employees were similarly situated, they were not treated differently. Rogers was disciplined, albeit less severely than plaintiff because she did not miss as many days. (Doc. 42 Ex. T.) Employee Julie Rogers missed 142.43 hours in 2000, 24 hours in 1999, 90 hours in 1998, and 8 hours in 1997. She was suspended for seven days in 2001, and received two letters of warning in 2000. Plaintiff argues that Rogers was only disciplined to cover up the disparate treatment of plaintiff, but there is no evidence that this was the case. Rogers did

---

[4]Defendant asserts, and plaintiff does not dispute, that there were 86 employees at plaintiff's place of work, 70 percent of whom were African American, and 85 percent of those were female. (Doc. 42 at ¶ 24.)

miss work warranting the discipline she received; the record is void of facts, beyond plaintiff's assertions, that Rogers was only disciplined to cover up the treatment of plaintiff. The letters of warning occurred before plaintiff's termination, and the fact that the suspension was after her termination was not indicative of a cover-up. Clearly, there was a basis for this discipline and Rogers was not disciplined solely to cover up defendant's treatment of plaintiff.

For the above reasons, even if plaintiff had maintained a prima facie case of discrimination, she failed to show that the defendant's non-discriminatory reasons for firing her were pretextual. Therefore, the motion of defendant for summary judgment is sustained. For the same reasons, the motion of plaintiff for summary judgment is denied. An order in accordance with this memorandum is filed herewith.

_____
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on July 31, 2006.